UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Misc. Action No.

In re Application of Daniel Snyder
for an Order Directing Discovery from
Jessica McCloughan and
Friday Night Lights LLC
Pursuant to 28 U.S.C. § 1782

---

**PETITIONER DANIEL SNYDER'S *EX PARTE* PETITION FOR ASSISTANCE IN AID OF FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782**

---

Based upon the annexed Declaration of Rizwan A. Qureshi, Esq., dated November 10, 2020 ("Qureshi Decl."), petitioner Daniel Snyder ("Mr. Snyder" or "Petitioner") respectfully petitions this Court *ex parte* for an Order pursuant to 28 U.S.C. § 1782, compelling respondents Jessica McCloughan ("Mrs. McCloughan") and Friday Night Lights LLC ("Friday Night Lights," and together with Mrs. McCloughan, the "Respondents"), an individual residing in this District, to provide discovery for use in a proceeding currently pending in India.

**I.  INTRODUCTION**

1.  Petitioner seeks discovery from Respondents in aid of litigation currently pending in The High Court of Delhi at New Delhi (the "Indian Court"), bearing the caption *Daniel Snyder Through His SPA Holder vs. Eleven Internet Services LLP & Ors.*, filed on August 7, 2020 (the "Indian Action").

2.  The Indian Action arises from the publication of a series of false and defamatory "news" articles targeting Petitioner on the MEA WorldWide website, located at www.meaww.com ("MEAWW"). The articles contain flagrantly false statements about Petitioner, including but not

limited to accusing Petitioner of sexual misconduct, such as involvement in sex trafficking, and a purported affiliation with sexual predator Jeffrey Epstein.

3. In the Indian Action, Petitioner asserts claims for defamation *per se* against the authors of these articles, as well as Eleven Internet Services LLP ("Eleven") which, upon information and belief, directed the publication of those false and defamatory articles on behalf of hidden third party clients.

4. Upon information and belief, Friday Night Lights and Mrs. McCloughan have relevant information concerning the same campaign of defamation against Petitioner that included the publication of the subject Defamatory Articles (as defined herein). Petitioner has learned that a least one third party with close ties to at least certain of the minority owners of the Washington Football Team, formerly known as the Washington Redskins (the "Team") – of which Petitioner is the majority owner – communicated with Mrs. McCloughan – the wife of the former Team general Manager, Scot McCloughan, and the owner and registered agent of Friday Night Lights – numerous times on a telephone number registered to Friday Night Lights. These phone calls occurred in and on the days prior to and immediately following the publication of the Defamatory Articles.

5. Respondents likely possess highly relevant documents and information relating to, *inter alia*, the creation of the Defamatory Articles (as defined herein); the parties behind payments made in order to procure the posting of the Defamatory Articles; the sources of information upon which the Defamatory Articles were based; and third party efforts to discredit and damage the Petitioner and the Team. The *Subpoena Duces Tecum* and *Subpoena Ad Testificandum* that Petitioner seeks to serve on Respondents appear as **Exhibits A** through **D** of the Qureshi Declaration.

6. The documents and information in Respondents' possession, custody, and/or control indisputably will aid the Indian Court in resolving Petitioner's defamation claims.

7. As discussed herein, Petitioner meets all the statutory criteria for the issuance of an order allowing the requested discovery. *See* 28 U.S.C. § 1782. Additionally, all the discretionary factors that this Court may consider favor granting this Petition. Petitioner thus respectfully requests that his Petition be granted.

8. Notably, three other district courts have recently granted Petitioner's requests for Section 1782 discovery in aid of the Indian Action against parties believed to be involved in the corrupt misinformation campaign being waged against Petitioner. *In re Application of Daniel Snyder for an Order Directing Discovery from New Content Media Inc. d/b/a MEA WorldWide Pursuant to 28 U.S.C. § 1782* (C.D. Cal., Misc. Action No. 2:20-mc-00076); *In re Application of Daniel Snyder for an Order Directing Discovery from Mary Ellen Blair and Comstock Holding Companies, Inc. Pursuant to 28 U.S.C. § 1782* (E.D.Va., Misc. Action No. 1:20-mc-00023-LO-TCB); and *In re Application of Daniel Snyder for an Order Directing Discovery from Moag & Co., Inc. Pursuant to 28 U.S.C. § 1782* (D. Md., Misc. Action No. ELH-20-2705).

## II. PARTIES TO THIS PETITION

9. Petitioner Daniel Snyder is a businessman and philanthropist best known for his majority ownership of the Washington Football Team, and is an adult individual and a resident of the state of Maryland.

10. Upon information and belief, respondent Jessica McCloughan is an individual residing in Loveland, Colorado.

11. Respondent Friday Night Lights LLC is a limited liability company organized and existing under the laws of the State of Colorado, with a registered address in Loveland, Colorado.

### III. JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this application under 28 U.S.C. §§ 1331 and 1782. This Court has personal jurisdiction over Respondents because they resides in the State of Colorado and in this Judicial District.

13. Under 28 U.S.C. §§ 1391(c) and 1782, venue is proper in this Judicial District because Respondents reside in this District.

### IV. THE INDIAN ACTION

#### A. Parties to the Indian Action

14. Petitioner has asserted a claim for defamation *per se* in the Indian Court against Indian company Eleven, and its Indian subsidiary MEAWW, as well as Indian residents Anay Chowdhary ("Anay") and Nirnay Chowdhary ("Nirnay"), Prarthna Sarkar ("Sarkar"), and Jyotsna Basotia ("Basotia").

#### B. The MEAWW Website and the Defamatory Articles

15. MEAWW purports to be, and holds itself out as, a news website. MEAWW publishes "news" stories regarding a broad variety of matters, including pop culture, law and government, and media and entertainment.

16. In reality, however, rather than being legitimate news sources and reporters, MEAWW intentionally sows disinformation at the behest of its undisclosed clients, including governments and intelligence services, and is often hired by clients that are cloaked behind several layers of anonymous corporate entities. MEAWW thus acts as a hired agent of these unnamed entities to knowingly spread, among other things, false and defamatory statements concerning its clients' rivals.

17. MEAWW has worldwide reach, as it publishes globally via the internet and receives internet traffic from the United States, India, and many other countries around the world.

It has touted itself as having more than 150 million unique users and more than 1 billion page views per month.

18. On or about July 16, 2020, MEAWW posted several false and wholly fabricated articles — written by Sarkar and Basotia, and published at the direction of the Chowdhary brothers — regarding Petitioner, which falsely accuse him of a broad array of acts of criminal sexual misconduct including, among other things, involvement in sex trafficking, and affiliating with sexual predator Jeffrey Epstein (collectively, the "Defamatory Articles").

19. These included "Washington Redskins owner Dan Snyder faces sex trafficking allegations; Internet says, 'He was on Epstein's list," published at https://meaww.com/washington-redskins-owner-dan-snyder-to-step-down-owing-to-sex-trafficking-allegations-fan-reaction (the "First Defamatory Article"). The First Defamatory Article falsely states that Mr. Snyder "has found himself in trouble yet again and this time it's allegedly for sex trafficking. The minority owners [of the Washington Football Team] are apparently looking at bringing him down citing inappropriate and unchaste behavior as one of the major reasons." The First Defamatory Article went on to publish utterly baseless speculation regarding whether a then-forthcoming *Washington Post* article about the Team "would be about [Mr. Snyder's] alleged involvement in sex trafficking[,]" quoting several anonymous posters from the internet forum Reddit.com, including baselessly quoting that "[Mr. Snyder] is getting [arrested] for sex trafficking. He was on [Jeffrey] Epstein's list too." *Id.*

20. MEAWW published a second article on July 16, 2020: "#RedskinsScandal: Will Dan Snyder rename Washington Redskins the 'Epsteins'? Angry Internet screams 'throw him out," published at https://meaww.com/washington-redskins-dan-snyder-jeffrey-epstein-sexual-harrasment-sex-trafficking-scandal-name-change (the "Second Defamatory Article," and together

with the First Defamatory Article, the "Defamatory Articles"). The Second Defamatory Article refers to, and repeats, the false allegations of the First Defamatory Article: namely, the false claims that Mr. Snyder is linked to sexual predator Jeffrey Epstein and that Mr. Snyder is or was involved in sexual misconduct, including sexual harassment and/or sex trafficking.

21. These blatantly false and wholly fabricated articles purport to be factual news stories, but were and are utterly untrue and have no legitimate journalistic basis whatsoever.

22. However, although MEAWW publicly named "the internet" as its source for the false and libelous statements in the Defamatory Articles, upon information and belief certain individuals either furnished, or procured for, the defendants in the Indian Action false and unsubstantiated claims regarding Mr. Snyder in connection with MEAWW's drafting of the Defamatory Articles.

23. The statements that MEAWW published about Mr. Snyder are categorically false. Moreover, the defendants in the Indian Action published these defamatory, inflammatory statements about Mr. Snyder with deliberate intent to damage Mr. Snyder, or at best, complete disregard for their basis in fact.

24. Although MEAWW reluctantly removed the Defamatory Articles after Petitioner demanded their immediate removal, the damage to Mr. Snyder's reputation had already been done.

25. Mr. Snyder's children and other family members, and numerous of Mr. Snyder's friends, neighbors, and business associates, were exposed to the Defamatory Articles, either by directly viewing the Defamatory Articles online or by receiving word of the Defamatory Articles. Consequently, Mr. Snyder's reputation and good standing has been severely harmed, and will continue to be harmed, by the Defamatory Articles, and the members of Mr. Snyder's family have

been severely harmed due to the publication of these lies on behalf of hidden third party clients of MEAWW.

26. The false allegations that the defendants in the Indian Action have seeded on the internet have taken root beyond MEAWW itself. For instance, on or about July 16, 2020 – not coincidentally, the very same day that MEAWW published the Defamatory Articles at issue herein – the following appeared on a Twitter account that has been confirmed as a fake account existing for no purpose other than to propagate false and misleading information:

> According to insiders and anonymous Washington Post employees, the [upcoming] article will allege that: Dan Snyder abuses drugs and alcohol[;] Snyder paid off refs. Some refs have made $2 million from him. And Snyder is not the only team owner paying off refs. Others do it too. Snyder and former Redskins coach Jay Gruden, brother of Jon Gruden, pimped out their cheerleaders to season ticket holders while holding their passports from them in a foreign country. Jay Gruden and then Redskins running back Kapri Bibbs were sleeping with the same woman. When Jay found out, he got petty and benched Bibbs. During that game when Bibbs was on the bench, Bibbs' replacement missed a block and that resulted in quarterback Alex Smith suffering a broken leg. Alex hasn't been able to play football ever since[.] Snyder and Gruden would hold sex parties with rampant drug usage and some sexual assaults[.] Snyder held nude photoshoots with the Redskins cheerleaders[.] Lawyers are already involved[.]

Whether this account is one of the "bots" utilized regularly by MEAWW to further propagate its for-profit lies, or written by a human agent of MEAWW, will be further elucidated through discovery sought herein.

27. Petitioner commenced the Indian Action on August 7, 2020, asserting claims for defamation *per se* arising out of the Defamatory Articles. Petitioner seeks damages of $10 million.

V. **RESPONDENTS POSSESS RELEVANT DOCUMENTS AND KNOWLEDGE THAT WOULD AID IN PROSECUTING THE INDIAN ACTION**

28. Mrs. McCloughan is the wife of former Team General Manager Scot McCloughan.

29. Mrs. McCloughan is also the owner and registered agent of Friday Night Lights.

30. Petitioner has obtained documents confirming that Mrs. McCloughan communicated with at least one former Team employee on at least forty-four (44) occasions both in the days leading up to and immediately following the publication of the Defamatory Articles. Each of Mrs. McCloughan's calls were made via a phone number registered to her company, Friday Night Lights. The volume and timing of these calls suggest that Respondents had advance knowledge of the publication and contents of the Defamatory Articles, and/or the publication and contents of a forthcoming July 16, 2020 article in the Washington Post about the Team. Further, the 44 calls between Respondents and a former Team employee were frequently preceded or followed by calls that same day – sometimes within minutes – between the former Team employee and representatives of the Washington Post and/or one of the minority owners of the Team. All of this suggests a close coordination among Respondents and the former Team employee in spreading corrupt misinformation about Petitioner.

31. For all of the foregoing reasons, Petitioner has a good faith belief that Respondents have specific knowledge of the creation and distribution of the MEAWW articles, and thus has information relevant to the Indian Action.

## VI. DISCOVERY REQUESTED

32. Upon information and belief, Respondents are in possession, custody, and/or control of substantial documentary information — including emails, text messages, electronic and physical notes, call records, and other documents — that would demonstrate their connections to MEAWW, other third parties hostile to Petitioner, including press outlets, and the coordination between each of the foregoing to disparage and defame Petitioner — all of which is currently at issue in the Indian Action. Accordingly, Respondents possess documents and information that bear directly upon the issues in the Indian Action and which Petitioner would be unable to obtain through discovery in the Indian Action.

33. As set forth in further detail in the subpoenas, Petitioner seeks discovery concerning (1) Respondents' communications with third parties concerning the MEAWW articles; (2) Respondents' communications with the Indian Defendants, or their representatives; (3) the identities of any other third parties involved in directing, coordinating with or supporting the negative information campaign about Petitioner; and (4) other documents and information that are relevant to the Indian Action and are available solely through Respondents.

34. In addition to requests for the production of documents from Respondents, Petitioner seeks to depose Respondents concerning the subject matters described above and in the respective subpoenas directed to them.

## VII. PETITIONER IS ENTITLED TO THE DISCOVERY SOUGHT HEREBY

### A. Section 1782 Governs this Court's Authority to Order Discovery

35. 28 U.S.C. § 1782(a) provides, in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

36. Since 1948, "Congress [has] substantially broadened the scope of assistance federal courts could provide for foreign proceedings," pursuant to § 1782. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256-57 (2004).

37. Indeed, courts in this Circuit have repeatedly recognized the liberal policy in favor of granting petitions for judicial assistance under § 1782. *See, e.g.*, *Republic of Ecuador v. Bjorkman*, 801 F. Supp. 2d 1121, 1126 (D. Colo. 2011), *aff'd* 2011 U.S. Dist. LEXIS 129816, 2011 WL 5439681 (10th Cir. 2011); *Westjest Airlines, Ltd. v. Lipsman*, Civil Action No. 15-mc-00174-MSK-KMT, 2015 U.S. Dist. LEXIS 155228, at *5 (D. Colo. Nov. 17, 2015). A district

court should consider a Section 1782 request in the light of the statute's aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts. *Intel*, 542 U.S. at 252; *see Kozuch v. Kozuch,* Civil Action No. 1:18-mc-00086-WYD, 2018 U.S. Dist. LEXIS 158172, at *1-2 (D. Colo. June 7, 2018).

### B. Petitioner Satisfies the Requirements under Section 1782

38. A district court has authority to grant an application for judicial assistance pursuant to Section 1782 if the following requirements are met: "(1) the person from whom discovery is sought resides (or is found) in the [District of Colorado]; (2) the discovery is for use in a foreign proceeding before a tribunal; and (3) the application is made by a foreign or international tribunal or any interested person." *Westjest Airlines, Ltd.*, 2015 U.S. Dist. LEXIS 155228, at *4. Each of these prerequisites for this Court to order discovery in aid of the Indian Action is satisfied.

39. *First*, both Mrs. McCloughan and Friday Night Lights are residents of Loveland, Colorado and therefore reside in this District.

40. *Second*, this request seeks the production of documents from and testimony by Respondents in support of the Indian Action. A true and correct copy of the pleadings filed in the Indian Action is attached to the Qureshi Decl. as **Exhibit E,** and copies of the proposed subpoenas to be served on Respondents are annexed to the Qureshi Decl. as **Exhibits A** through **D**. As set forth above, the discovery that Petitioner seeks is intended to further establish the liability of the defendants in the Indian Action by elucidating their bad faith and active participation in a broader scheme to defame Petitioner, as well as identifying those individuals and entities who perpetuated the corrupt disinformation campaign.

41. ***Third***, Petitioner is an "interested person" within the meaning of 28 U.S.C. § 1782. An interested person is one who has significant "participation rights" in the foreign action. *Intel*, 542 U.S. at 256-57. As the Supreme Court noted in *Intel*, "litigants are included among, and may be the most common example, of the 'interested person[s]' who may invoke § 1782." 542 U.S. at 256. Petitioner is the plaintiff in the Indian Action, and therefore is an "interested person" for the purposes of § 1782.

42. Accordingly, Petitioner's request satisfies the elements necessary to permit discovery pursuant to 28 U.S.C. § 1782, as recognized in this Circuit.

**C.  The Court Should Exercise its Discretion to Grant Petitioner the Discovery He Seeks**

43. Once the statutory requirements of 28 U.S.C. § 1782 are met, the district court is free to grant discovery in its discretion. *See Westjest Airlines,* 2015 U.S. Dist. LEXIS 155228, at *4. The Supreme Court has identified a number of factors for courts to consider when ruling on a § 1782 application: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the foreign proceeding, and the receptivity of the foreign court to federal-court assistance; (3) whether the application conceals an attempt to circumvent foreign proof-gathering restrictions of a foreign country; and (4) whether the application is unduly intrusive or burdensome. *See Intel*, 542 U.S. at 264-65; *Westjest Airlines,* 2015 U.S. Dist. LEXIS 155228, at *4 (internal quotation omitted). Here, all of these factors weigh in favor of granting the application.

44. ***First***, where, as here, discovery is sought from a party that is not participating in the foreign proceeding, the need for court-ordered discovery is apparent. As the Supreme Court explained: "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in the foreign proceeding may be outside

the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782 aid." *Intel*, 542 U.S. at 264 (internal citations omitted). Respondents are not parties to the Indian Action and, upon information and belief, have no legal presence in India. Thus, the Indian Court has no jurisdiction to acquire the documents and testimony that Petitioner seeks here and which are critical to Petitioner's ability to prove his claims in the Indian Action.

45. ***Second,*** courts must look at the nature of the foreign proceeding and the receptivity of the foreign tribunal to federal court assistance. Here, there is no evidence that the discovery sought in this application would "offend" the Indian Court. To the contrary, the discovery sought would relate to the lack of truth in the Defamatory Articles and shed light on the authors' motivations in posting the Defamatory Articles, goals which are directly relevant to the Indian Action.

46. ***Third***, this application is not an attempt to circumvent any foreign proof-gathering restrictions and does not violate any Indian restrictions on gathering evidence.[1] Petitioner has a good-faith basis for believing that he will be able to use these materials in the Indian Action. Petitioner has no reason to believe that the Indian Court would not be receptive to the judicial assistance requested, nor is Petitioner aware of any limitation on discovery imposed by the Indian Court, either generally or specifically, such that the request would "circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. 241 at 264-65. The Court's grant of judicial assistance would permit Petitioner to appropriately

---

[1] As the Supreme Court noted in *Intel*, the Court's analysis of a Section 1782 application does not extend to the discoverability or admissibility of the information in the foreign forum. *See* 542 U.S. at 260 ("Beyond shielding material safeguarded by an applicable privilege, however, nothing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there.").

prosecute its claim against Eleven, along with the authors of the Defamatory Articles and Eleven's relevant principals and affiliates, in India given that Respondents are in exclusive possession of information highly relevant to Petitioner's claim.

47. *Fourth*, the document requests in the proposed subpoenas are neither unduly burdensome nor intrusive. Petitioner has tailored his requests to seek only those materials relevant to the Indian Action, and the documents requested lend themselves to easy identification and production.

## VIII. CONCLUSION

48. For the reasons set forth herein, Petitioner respectfully requests that the Court issue an Order, pursuant to 28 U.S.C. § 1782, granting Petitioner leave to serve Respondents with the subpoenas appended to the Qureshi Decl. as **Exhibits A, B. C** and **D**.

Dated: November 10, 2020
       Denver, Colorado

By: s/ Coleman T. Lechner
Coleman T. Lechner
FOLEY & LARDNER LLP
600 17th St., Suite 2020S
Denver, CO 80202
Tel. 720-437-2000
clechner@foley.com

Rizwan A. Qureshi *(Admission Pro Hac Vice Pending)*
REED SMITH LLP
1301 K Street NW
Suite 1000, East Tower
Washington, DC 20005
Tel: (202) 414-9200
rqureshi@reedsmith.com

Jordan W. Siev *(Admission Pro Hac Vice Pending)*
599 Lexington Avenue, 22nd Floor
New York, NY 10022
Tel: (212) 521-5400
jsiev@reedsmith.com

TACOPINA, SEIGEL & DEOREO, P.C.
Joseph Tacopina
Chad D. Seigel
275 Madison Avenue, 35th Floor
New York, NY 10016
jtacopina@tacopinalaw.com
cseigel@tacopinalaw.com
(*Admission Pro Hac Vice Forthcoming*)

*Attorneys for Petitioner
 Daniel Snyder*